STATE *ex rel.* WILSON ZIRK

*v.*

HONORABLE H. G. MUNTZING, *Judge,*
CIRCUIT COURT OF HARDY COUNTY,
WEST VIRGINIA

(No. 12124)

Submitted September 6, 1961. Decided December 12, 1961.

*Bean & Hamilton, Ralph J. Bean,* for Relator.

*C. Donald Robertson,* Attorney General, *Andrew J. Goodwin,* Assistant Attorney General, *Lewis S. Moomau,* Prosecuting Attorney for Respondent.

HAYMOND, PRESIDENT:

In this original proceeding in prohibition, instituted in this Court July 13, 1961, two questions, which will be dealt with conversely to the order in which they are stated, are presented for decision. Those questions are: (1) Whether prohibition lies to prevent the petitioner, Wilson Zirk, from being twice put in jeopardy of life or liberty for the same offense by the respondent, Honorable H. G. Muntzing, Judge of the Circuit Court of Hardy County, West Virginia, in a criminal proceeding upon an indictment for the murder of Eldridge Lee Ritter returned against the petitioner and now pending in that court; and (2) whether the offense set forth in a subsequent joint indictment against the petitioner and four other persons charging them with conspiracy to murder Eldridge Lee Ritter, upon the trial of which indictment the petitioner was found not guilty by the verdict of the jury, is the same offense as that charged against the petitioner in the first mentioned indictment for murder.

On September 6, 1961, the day to which the rule was returnable, this proceeding was submitted for decision upon the petition and its exhibits, among which are copies of the petitioner's plea of former jeopardy and the order of the circuit court holding the plea to be insufficient in law entered July 10, 1961, the answer of the respondent and the written briefs and oral arguments of the attorneys for the respective parties.

There is no conflict in the material facts and the questions for decision are questions of law.

On August 2, 1960, the petitioner was indicted by the grand jury of Hardy County, West Virginia, for the murder of Eldridge Lee Ritter in July 1960. Upon his trial for that offense in December 1960 in that court the jury, being unable to agree upon a verdict, was discharged from further consideration of the case. Subsequently on February 21, 1961, the grand jury of Hardy County returned a joint indictment against the petitioner and four other persons charging them with the crime of conspiracy to commit the murder of the same Eldridge Lee Ritter on the same day in July 1960. Upon the separate trial of the petitioner on that indictment the jury returned a verdict of not guilty and by final unappealable judgment entered July 1, 1961, upon the foregoing verdict of not guilty, the petitioner was discharged in that proceeding. By order entered June 30, 1961, a copy of which is filed as an exhibit with the petition, the circuit court fixed July 17, 1961, as the date for a second trial of the petitioner upon the original indictment for murder. On July 10, 1961, the petitioner filed his plea of former jeopardy, setting forth his acquittal on July 1, 1961, under the indictment for conspiracy to commit murder, as a bar of any prosecution under the original indictment for murder and prayed that he be forever released and discharged by the circuit court from the charge of murder in the indictment returned against him August 2, 1960. By order entered July 10, 1961, the circuit court held the petitioner's plea of former jeopardy to be insufficient in law and recited that the facts and allegations in that plea were stipulated to be true and correct by the prosecuting attorney of Hardy County and by the attorneys for the petitioner.

The petitioner's plea of former jeopardy, which though designated "Defendant's Plea of Double Jeopardy" is a plea of *autrefois acquit* to the indictment for murder in the pending criminal proceeding, alleges,

in substance, these facts, which are conceded by the respective parties and accepted by the circuit court to be true and correct: The murder indictment charges that the petitioner Zirk, in July 1960, feloniously, wilfully, maliciously, deliberately and unlawfully, did slay, kill and murder Eldridge Lee Ritter, in Hardy County, West Virginia, and the trial of that proceeding was set for July 17, 1961. After the trial on the murder indictment in December 1960, in which the jury disagreed and was discharged, the petitioner and four other persons were indicted on February 21, 1961, for the crime of conspiracy to commit murder, which indictment alleges that the petitioner on August 2, 1960, was indicted for the murder of Eldridge Lee Ritter and that such indictment was then pending in the Circuit Court of Hardy County. The indictment for the crime of conspiracy to commit murder also alleges that the four other persons in July 1960 were present when a serious wound was inflicted by the petitioner upon Eldridge Lee Ritter; that after the wound was inflicted Ritter lived and languished for possibly thirty to sixty minutes, when, as a result of the wound, Ritter died; that after his death the petitioner and the four other persons feloniously, wilfully, maliciously, deliberately and unlawfully counseled, conspired, aided, abetted and assisted in the commission of the murder of Ritter and in the suppression of evidence concerning the murder by transporting him while still alive to a deserted place in Hardy County and leaving him there to die as the result of the wound inflicted upon him by the petitioner, by agreeing not to give aid, assistance or help to save Ritter from death from his wound, by deserting and abandoning him so that he could not receive or obtain help to save his life, and by returning to the scene where the wound was inflicted and agreeing not to apprise or inform any one concerning the acts and events which finally resulted in Ritter's death. The petitioner was separately tried on the indictment for conspiracy to commit murder and on July 1, 1961, the jury returned a verdict which found him to be not guilty, which verdict was confirmed by the final judg-

ment of the circuit court entered July 1, 1961. In the trial of the conspiracy to commit murder the circuit court instructed the jury that one of these four verdicts could be returned by the jury: (1) Conspiracy to commit murder of the first degree, with recommendation of mercy; (2) conspiracy to commit murder of the second degree; (3) conspiracy to commit voluntary manslaughter; or (4) not guilty. The petitioner who was tried and acquitted of the charge of conspiracy to commit murder is the same person who is charged with the murder of Eldridge Lee Ritter in the indictment returned August 2, 1960, the trial of which was set for July 17, 1961. The victim of the offense charged against the petitioner in each of the foregoing two indictments, Eldridge Lee Ritter, is the same person and his death, as alleged in both indictments, occurred at the same time and resulted from the same acts which are alleged to have been committed by the petitioner. In the earlier trial of the indictment for murder, in which the jury disagreed and no verdict was rendered, the circuit court instructed the jury that one of these five verdicts could be returned by the jury: (1) Murder of the first degree, with recommendation of mercy; (2) murder of the second degree; (3) voluntary manslaughter; (4) involuntary manslaughter; or (5) not guilty. The witnesses used by the State in the trial of the indictment for conspiracy to commit murder, in which trial the jury returned a verdict of not guilty, the witnesses who testified in the trial of the indictment for murder, in which no verdict was rendered, and the witnesses for the trial of the same indictment for murder set for trial on July 17, 1961, are substantially the same; the evidence to be presented by the State and by the petitioner will be the same as that presented by those who testified in the two former trials; and the punishment to be inflicted and the sentence to be imposed would be identical in the trial of the indictment for murder as it would have been if the petitioner had been convicted, instead of acquitted, in the trial of the indictment for conspiracy to commit murder. In the trial of the petitioner upon the indict-

ment for conspiracy to commit murder the facts were fully developed and the proceeding was heard and determined in its entirety and upon its merits.

In his plea of former jeopardy, upon the basis of the foregoing uncontradicted facts incorporated in that plea, the petitioner asserts that if he is tried in the Circuit Court of Hardy County at any time upon the indictment for murder, returned against him on August 2, 1960, he will be deprived of his constitutional rights and that such trial would be in violation of Article III, Section 5, of the Constitution of this State, which provides that no person shall be twice put in jeopardy of life or liberty for the same offense and would also be in violation of Section 13, Article 11, Chapter 61, Code, 1931, which provides that a person acquitted by a jury upon the facts and merits in a former trial may plead such acquittal in bar of the second prosecution for the same offense, notwithstanding any defect in the form or substance of the indictment or accusation on which such person was acquitted.

In the order of the circuit court entered July 10, 1961, holding the plea of former jeopardy to be insufficient in law, the court states that the facts and allegations in such plea were stipulated and agreed by the prosecuting attorney and by the attorneys for the defendant to be true and correct, and it clearly appears from the plea of former jeopardy that the petitioner was actually twice indicted for the murder of Eldridge Lee Ritter; that the murder with which he was charged in each indictment was committed upon the same person at the same time and place and in the same manner; and that upon the trial of the second indictment the jury found that the petitioner was not guilty of that offense. The second indictment was based on Section 7, Article 6, Chapter 61, Code, 1931, which provides, in part, that if the death of any person shall result from the commission of a conspiracy by two or more persons for the purpose of inflicting any punishment or bodily injury on any other person or persons, every person engaged in the commission of such conspiracy shall be

guilty of the crime of murder of the first degree and upon conviction punished as in other cases of murder of that degree.

Upon the trial of the second indictment the charge of conspiracy was either abandoned by the State or there was not sufficient evidence to support it; and it is evident that the trial upon that indictment was converted into a trial of the petitioner for the crime of murder. This is clearly shown by the action of the circuit court in instructing the jury that it could return a verdict of conspiracy to commit murder of the first degree, with recommendation of mercy, the State having waived the death penalty; of conspiracy to commit murder of the second degree; of conspiracy to commit voluntary manslaughter; or of not guilty. Inasmuch as that indictment charged that the death of Eldridge Lee Ritter resulted from the wound inflicted by the petitioner and the agreement of the petitioner and the other four persons to prevent any assistance or treatment which would save his life, the only offense of which petitioner could have been convicted under the statute creating the crime of conspiracy would have been murder of the first degree and not murder of the second degree or voluntary manslaughter. Upon the trial of that indictment, however, he could have been convicted, under the statute creating the crime of murder, Section 1, Article 2, Chapter 61, Code, 1931, of murder of the first or second degree, or voluntary manslaughter. See *State v. Roush,* 95 W. Va. 132, 120 S. E. 304; *State v. McCoy,* 61 W. Va. 258, 57 S. E. 294.

The allegations of the plea of former jeopardy, which as heretofore indicated are admitted to be true and correct, establish beyond question that upon the trial of the second indictment the State attempted to convict the petitioner of the crime of murder; that the offense of which he was acquitted is the same offense with which he is charged in the indictment for murder; and that the circuit court in directing that he be again tried upon that indictment which is still pending in that court, will cause him to be tried a second time for the

same offense of which he has been acquitted by the verdict of the jury upon the trial of the second indictment.

In *State v. Roush,* 95 W. Va. 132, 120 S. E. 304, the defendant was indicted under Sections 9, 10 and 13, Chapter 148, Code, 1923, which was similar to the statute that now appears as Section 7, Article 6, Chapter 61, Code 1931, and with three other persons charged with combining and conspiring together for the purpose of inflicting bodily injury upon another person and that in pursuance of the conspiracy they did wilfully and maliciously kill and murder such other person. The defendant Roush was tried and convicted of murder of the second degree and sentenced to imprisonment in the State penitentiary. His conviction was set aside by this Court on several grounds, one of which was the giving of conflicting instructions relating to murder and the charge of conspiracy set forth in the indictment. In the opinion this Court said: "It will be noted that indictment is under the Red Men's Act, secs. 9 and 10, chap. 148, Code. And the theory of the state at the inception was that the assault by Roush with his fists was a result of the conspiracy, and therefore defendant was guilty of murder in the first degree under the act. It is stated in the brief that at the conclusion of the evidence the state abandoned the conspiracy charge, and relied upon the indictment as for murder under sec. 1, chap. 144, Code. This alleged abandonment was not made a matter of record; although the court instructed the jury (defendant's instruction 13-a) that defendant was not being tried upon the charge of conspiracy as a substantive offense created by secs. 9 and 10, chap. 148, Code, and that they could not find him guilty of the substantive offense of entering into a conspiracy. The verdict relieves defendant of the conspiracy, else it would likely have been for murder in the first degree."

In *State v. McCoy,* 61 W. Va. 258, 57 S. E. 294, this Court held in point 1 of the syllabus that an indictment charging conspiracy to inflict punishment and bodily

injury on a person, and charging also his murder, was a good indictment for murder. The opinion in that case contains this language: "This indictment is under sections 9, 10, chapter 148, Code, 1899, known as the 'Redmens Act.' It follows its language, 'did combine, conspire and confederate together for the purpose of inflicting bodily injury upon any other person.' Therefore, it is sustained by the familiar rule that it is generally sufficient to charge an offense in statutory language. But why discuss this conspiracy part of the indictment? There was no conviction of conspiracy, but of murder. Eliminate the conspiracy part, and we have left a good indictment for murder. Therefore, the conspiracy charge is not material."

In determining whether the offense charged in each of two indictments is the same offense, the sufficiency of the evidence to support a conviction of the offense charged in each indictment should be considered. In *State v. Friedley,* 73 W. Va. 684, 80 S. E. 1112, this Court held in point 5 of the syllabus that on the trial of the issue on a plea of former acquittal the test is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first indictment and in the opinion said: "The test in such cases, says *Burress v. Com.,* 27 Grat. 940, 941, is, 'whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first.' So, also, says *State v. Dewees,* (S. C.) 11 Am. & Eng. Anno. Cas. 991."

The uncontroverted allegations of the plea of former jeopardy show that the evidence introduced upon the trial of the second indictment, if believed by the jury, would have been sufficient to procure a legal conviction upon the trial of the first indictment as the plea alleges that the evidence in each instance would in substance be the same. The facts required to convict the petitioner of murder on the second indictment would necessarily have convicted him of that offense on the first indictment. Apparently the State so

regards the evidence in attempting to try the petitioner again on the first indictment, even though a jury disagreed upon the former trial on that indictment and another jury acquitted the petitioner upon the trial of the second indictment. At any rate the allegations of the plea, which have been conceded to be true and correct, show that the test to determine the identity of the offense charged in each indictment has been met and satisfied.

In a case which closely resembles this proceeding, *State v. Bell,* 205 N. C. 225, 171 S. E. 50, the Supreme Court of North Carolina held that the prior acquittal of the defendant of a charge of conspiracy to rob constituted a bar to his subsequent prosecution for murder, where the attempted robbery and homicide grew out of the same transaction, and the facts to convict on the second indictment would necessarily have convicted on the first. The opinion in that case contains these statements:

"The case was tried upon the theory that if the defendants conspired to burglarize or to rob the home of George Dryman and a murder were committed by any one of the conspirators in the attempted perpetration of the burglary or robbery, each and all of the defendants would be guilty of the murder. This is a correct proposition of law. *S. v. Donnell,* 202 N. C., 782, 164 S. E., 352; *S. v. Miller,* 197 N. C., 445, 149 S. E., 590. It is provided by C. S., 4200 that a murder 'which shall be committed in the perpetration or attempt to perpetrate any * * * robbery, burglary or other felony, shall be deemed to be murder in the first degree.'

"The evidence discloses that the conspiracy was to rob, and not to murder, George Dryman; that the homicide was committed in the attempted perpetration of the robbery; and the defendant, Robert Bell, offered to show, under his plea of former jeopardy, that he had theretofore been tried and acquitted on the charge of a conspiracy to rob the deceased.

"It is clear that the attempted robbery and the homicide grew out of the same transaction, and so far as Robert Bell is concerned, the facts required to convict him on the second indictment would necessarily have convicted him on the first. *S. v. Freeman,* 162 N. C., 594, 77 S. E., 780; *S. v. Hankins,* 136 N. C., 621, 48 S. E., 593; *S. v. Lawson,* 123 N. C., 740, 31 S. E., 667; *S. v. Cross and White,* 101 N. C., 770, 7 S. E., 715; *S. v. Nash,* 80 N. C., 650.

"It is true, there is a difference between a conspiracy to burglarize a house with intent to commit robbery therein, and a conspiracy to burglarize it with intent to commit murder (*S. v. Allen,* 186 N. C., 302, 119 S. E., 504), but here the murder was incidental to the attempted robbery, as all the evidence shows, and upon this theory the case has been tried."

In *State v. Mowser,* 92 N. J. Law 474, 106 A. 416, 4 A. L. R. 695, the New Jersey Court of Errors and Appeals held that a conviction of robbery is a bar to a subsequent prosecution for murder resulting from the criminal act done in the perpetration of the robbery, where a statute makes an undesigned killing in the perpetration of robbery murder. In the opinion the court said:

"The principle to be extracted from well-considered cases is, that by the term same offence is not only meant the same offence as an entity and designated as such by legal name, but also any integral part of such offence which may subject an offender to indictment and punishment. *Reg. v. Walker,* 2 Moody & R. 457; *Rex v. Stanton,* 5 Cox C. C. 324.

"When such integral part of the principal offence is not a distinct affair, but grows out of the same transaction, then an acquittal or conviction of an offender for the lesser offence will bar a prosecution for the greater.

"To adopt any other view would tend to destroy the efficacy of the doctrine governing second jeopardy,

which is imbedded in our organic law as a safeguard to the liberties of the citizens."

When it appears, from the allegations of a plea of former jeopardy to an indictment for the murder of a designated person under the statute creating that offense, which allegations are admitted to be true and correct and which plea has been held to be insufficient in law by the court in which the indictment for murder is pending, that the defendant together with other persons was subsequently indicted for conspiracy to commit murder of the same person under a statute which provides that if the death of any person shall result from the conspiracy every person engaged in such conspiracy shall be guilty of murder of the first degree, that in the trial of the defendant on the indictment for conspiracy he was tried for the crime of murder and was found not guilty by the verdict of the jury, that the person alleged in both indictments to have been murdered by the defendant was the same person, and that the death of such person was caused by the defendant at the same time and place in the same manner set forth in each indictment, such plea sufficiently states the defense of former jeopardy and shows that if the defendant is tried on the indictment for murder he will be twice put in jeopardy of life or liberty for the same offense in violation of the constitutional provision that no person shall be twice put in jeopardy of life or liberty for the same offense.

It may be contended that though the second indictment sufficiently alleges the crime of conspiracy from which a homicide resulted, it is defective as an indictment for murder. However that may be, the question whether that indictment is a good indictment for murder is neither presented for decision nor of any importance in the disposition of this proceeding for the reason that under the provisions of Section 13, Article 11, Chapter 61, Code, 1931, a person acquitted by the jury upon the facts and merits on a former trial may plead such acquittal in bar of a second prosecution for the same offense, notwithstanding any defect in the form or

substance of the indictment or accusation on which he was acquitted.

In *State v. Runyon,* 100 W. Va. 647, 131 S. E. 466, this Court discussed the scope and effect of the foregoing statute but held it to be inapplicable to the facts of that case from which it appeared that there had been no acquittal of the defendant by the verdict of the jury upon the trial of that case. In that case, upon the trial of the defendant on a fatally defective indictment for murder, a demurrer to the indictment was over-ruled, and the defendant entered his plea of not guilty. Evidence was introduced, instructions were given, and arguments were made. After the jury had retired to consider its verdict, the court, on motion of the State, recalled the jury, withdrew a juror and discharged the jury. In the opinion, in dealing with the statute, this Court said: "We interpret this statute to modify the general rule adhered to by the majority of the states, to this extent, that when a case has been fully developed before a jury and they have returned their verdict of acquittal upon the facts and merits of the case, then a defect in the form or substance of the indictment does not prevent the person so acquitted from pleading this acquittal in bar of a prosecution for the same offense. But a defendant to show himself entitled to the right 'must by the averments of his plea, if the facts do not otherwise appear in the record, bring his case within the terms of the section; that is, aver that his acquittal was upon the facts and merits.' *Burress v. Commonwealth,* 27 Grat. 934. We do not understand this section to mean that where a defendant has been placed on trial upon a fatally defective indict-ment which would be insufficient to support a convic-tion, and before the jury rendered a verdict of acquittal on the facts and merits, the jury may not be discharged from further consideration of the case. The statute has reference only to cases where there has been an acquittal on the facts and merits. There has not been such an acquittal in the case at bar." Unlike the ab-sence of an acquittal of the charge in the *Runyon* case,

the acquittal in the trial of the second indictment of the petitioner upon the facts and merits of the case alleged in his plea, is conceded to be true.

Section 1, Article 1, Chapter 53, Code, 1931, relating to the writ of prohibition provides that "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." There can be no doubt that the circuit court has jurisdiction of the subject matter of the pending indictment of the petitioner for the crime of murder, sometimes referred to in this opinion as the first indictment, and also has jurisdiction of the petitioner under that indictment. It is equally clear, however, from the admittedly true and correct allegations of the plea of former jeopardy that the offense of murder, charged against the defendant in both the first and the second indictments is the same offense, and that if the petitioner is brought to trial for the offense of murder on the first indictment, after having been acquitted of that offense on its merits by the not guilty verdict of the jury upon the trial of the second indictment, he will be twice put in jeopardy for the same offense in contravention of the express command of Article III, Section 5 of the Constitution of this State that no person shall "be twice put in jeopardy of life or liberty for the same offence." An acquittal of a person on the merits of an offense is a bar to his second prosecution for that offense. *State v. Shelton,* 116 W. Va. 75, 178 S. E. 633.

In *Ex Parte Bornee,* 76 W. Va. 360, 85 S. E. 529, L. R. A. 1915F 1093, a collateral proceeding in habeas corpus, instituted by the petitioner, to obtain his release while being held for a new trial on an indictment for an offense of which he had been found not guilty by the verdict of a jury which was set aside by the trial court on motion of the State, this Court, discussing the action of a court in putting a person twice in jeopardy for the same offense, used this language: "It has been

suggested that habeas corpus does not lie—that the remedy of the prisoner is by appeal for error. That the prisoner may be discharged by the writ of habeas corpus we have no doubt. The court was absolutely without jurisdiction to hold him again for the same offense. It can not rely on the unconstitutional legislation whereby it is said the State may appeal in such cases. No court as well as no legislature has jurisdiction or province to violate the constitutional inhibition that one shall not be twice put in jeopardy for the same offense. All orders and judgments of the court after the verdict of acquittal are totally void. They can not afford warrant for the holding of Bornee in jail. As against them he may stand on the paramount guaranty of the constitution in his favor. The court's jurisdiction over him for the offense charged ceased by the return of a verdict of acquittal. Any further step against him on the indictment is void and without legal effect.''

To permit the circuit court, after it has considered the plea of former jeopardy in which the material facts are by stipulation accepted as true and correct and after it has erroneously decided as a matter of law that the undisputed facts did not constitute a valid defense of second jeopardy to the offense charged in the first indictment, to try the petitioner on the pending indictment for murder would enable that court to exercise jurisdiction which under the Constitution it does not possess and to exceed its legitimate powers. Under Section 1 of the above quoted statute the writ of prohibition lies to prevent such action. See *State ex rel. Cecil v. Knapp, Judge,* 143 W. Va. 896, 105 S. E. 2d 569, and the many cases cited in the opinion in that case.

It is true that a writ of prohibition does not lie to correct errors or to usurp the functions of a writ of error or certiorari, or of the remedy by appeal. *State ex rel. Cecil v. Knapp, Judge,* 143 W. Va. 896, 105 S. E. 2d 569, and the cases cited in the opinion in that case. Under the undisputed facts alleged in the plea of former jeopardy and in view of the holding of the cir-

cuit court that the plea is insufficient in law, however, the only adequate remedy available to the petitioner to prevent him from being twice put in jeopardy for the same offense is a writ of prohibition to forbid that occurrence upon the scheduled trial of the first indictment. At the present stage of the criminal proceeding based on the first indictment which has been set for trial in the circuit court the defendant in that proceeding, the petitioner here, has no remedy, unless it be prohibition, until a trial has been had and final judgment upon a conviction has been entered when, if such should be the result of the trial, the remedy of a writ of error would become available. In the meantime he will have been twice put in jeopardy of life or liberty for the same offense which the Constitution says shall not be done. Unless a writ of prohibition is awarded, the petitioner's only course is to await adverse judgment in the pending criminal proceeding and then, and not until then, to raise, by writ of error, the issue of former jeopardy here presented, after having been subjected to the costly and unnecessary expense and delay of proceeding with the trial despite the action of the trial court in exceeding its legitimate powers. This Court has held that in that situation a writ of prohibition will be awarded to prevent such course of action. *State ex rel. Cosner v. See, Judge,* 129 W. Va. 722, 42 S. E. 2d 31; *White Sulphur Springs, Inc. v. Ripley,* 124 W. Va. 486, 20 S. E. 2d 794.

When the court in which a criminal prosecution is pending exceeds its legitimate powers in requiring the trial of a defendant on an indictment for murder, after holding insufficient in law a plea of former jeopardy to such indictment in which the material facts have been conceded to be true and correct and which show that the defendant has been acquitted by the verdict of a jury upon the merits on a trial for the same offense charged in a second indictment and that to try him again on the first indictment would put him twice in jeopardy of life or liberty for the same offense, the writ of prohibition will issue from this Court to prevent such action in

advance of such trial and without requiring the accused to await the rendition of an adverse final judgment to seek relief from such judgment by writ of error.

The respondent cites and relies upon *Bracey v. Robinson, Judge*, 83 W. Va. 9, 97 S. E. 295, and *State ex rel. Bowen v. Kirk*, 89 W. Va. 87, 108 S. E. 489, to support his contention that prohibition does not lie to determine the question of former jeopardy and that the action of the circuit court in holding the plea of former jeopardy insufficient in law and rejecting it for that reason can not be considered in prohibition but is reviewable only upon appeal or writ of error after conviction of the petitioner. As previously indicated, prohibition does not lie to correct errors committed by a court which is acting within its jurisdiction, or where the existence of jurisdiction depends on controverted facts which such court is competent to determine. 73 C. J. S., Prohibition, Section 12. The text in Section 12 of that treatise contains these statements: ''Prohibition does not lie where the existence of jurisdiction depends on matters or controverted facts which an inferior court or tribunal is competent to determine, * * *. * * * on the other hand, it has been held that the writ properly issues where an erroneous decision on a question of law operates as an unlawful assumption of jurisdiction.'' In *State ex rel. Addison v. Bowron*, 335 Mo. 1052, 75 S. W. 2d 850, in which a writ of prohibition was denied, the court said: ''Where the jurisdiction of a circuit court depends upon facts which are conceded, the question of its jurisdiction then becomes one of law which this court may determine in a prohibition proceeding. On the other hand, where, as here, the jurisdiction of the circuit court depends upon disputed questions of fact, that court has the right to determine its own jurisdiction from the facts before it, and prohibition will not be granted to prevent it from so doing.'' In *Leonard v. Willcox*, 101 Vt. 195, 142 A. 762, the opinion contains this language: ''But where the erroneous decision of the inferior tribunal is one which operates as an unlawful assumption of jurisdiction, prohibition may be had.''

It appears from the opinion in the *Bracey* case that the defendant moved the trial court to dismiss the proceeding and in support of the motion filed affidavits of the identity of the defendant and the identity of the offense, and that the court overruled the motion and refused to permit the defendant to file a plea of *autrefois acquit*. Unlike the situation disclosed by the plea of former jeopardy and the action of the circuit court in holding it to be insufficient in law in the case at bar, there was no showing in the *Bracey* case that the facts submitted on the motion to dismiss to establish the defense of former jeopardy were admitted or undisputed or that the court considered or held the plea to be insufficient in law, but instead the court merely refused to permit the plea to be filed. It is evident that in the *Bracey* case a question of fact for determination by the court or the jury was presented with respect to the defense of former jeopardy, and that in that situation this Court held that such defense under the plea of *autrefois acquit* was a matter within the jurisdiction of the court in which the charge to which it is applicable was pending and could not be set up in another court by an independent proceeding in prohibition while the case in which it may be a proper defense was pending and undetermined. In the opinion this Court said: "As to the former indictment and acquittal or conviction, the record must be adduced in support of the plea, as in the case of any other plea of *res judicata*. As to the identity of the person and, often as to the identity of the offense, extrinsic evidence must be adduced, and both of these questions may have to go to the jury for determination. Whether they must go to the jury in all cases, it is not necessary to inquire now. The question presented here is whether such defense is within the jurisdiction of the trial court, or rather whether it must be made in that court in the trial on the indictment. That it must is strongly suggested by its very nature and the authorities uniformally so hold. This was the conclusion of the Supreme Court of the United States in *Ex parte Bigelow*, 113 U. S. 328, based upon an exhaustive consideration of the matter. *If the de-*

*fense is clearly made out and put beyond question, the trial court may exceed its jurisdiction by rendition of a judgment of conviction.''* (Emphasis supplied). The last sentence in the above quotation indicates strongly that if the defense of former jeopardy is sufficiently established as a matter of law by facts which are conceded to be true and correct, as is shown by the plea of former jeopardy here under consideration, the action of the circuit court in proceeding with the trial of the petitioner on the murder indictment, notwithstanding such plea, would be in excess of its jurisdiction instead of mere error in the exercise of jurisdiction. If such action is in excess of the jurisdiction of the circuit court it is clear that a writ of prohibition would lie to prevent it from trying the petitioner again on the pending indictment for murder. Because of the difference with respect to the manner in which the defense of former jeopardy under the plea of *autrefois acquit* was presented and acted upon in the *Bracey* case and the manner in which the same defense of former jeopardy was presented and determined by the circuit court in connection with the trial of the petitioner a second time on the indictment for murder, the decision in the *Bracey* case with respect to the propriety of the remedy of prohibition is distinguishable from and is not controlling in the decision of this case.

In *State ex rel. Bowen v. Kirk,* 89 W. Va. 87, 108 S. E. 489, the opinion also indicates that a factual question was presented concerning the defense of former jeopardy and that in that situation this Court held that prohibition did not lie to prevent a justice of the peace from holding a preliminary examination of one accused of crime upon the ground that he had been previously examined upon and discharged from the same charge by another justice and that if such previous examination and discharge was a bar to a further examination upon the same charge it should be taken advantage of upon the second hearing. In the opinion this Court said: ''The defensive matter relied upon does not go to the jurisdiction of the justice to

try for the offense charged, but simply denies the right of the justice to hold him for the reason that he had been theretofore tried for the same offense. If the warrant had not charged the defendant with doing something which constituted an offense, then of course there would be an entire want of jurisdiction, and prohibition would lie to prevent the justice from trying him. In this case, however, the warrant charges an offense. The justice's jurisdiction to issue the warrant cannot be questioned. The matter relied upon does not impeach that jurisdiction, but simply goes to the authority to try him a second time for the same thing. *The determination of this question, assuming that it would be a good defense, involves the establishment of the identity of the accused, the identity of the offense, and proof of his former acquittal. All of these questions would have to be inquired into and determined in his favor.*"

" \* \* \* *If it is shown beyond question and without controversy that the accused party should not be held, it may be said that a justice of the peace holding him under such circumstances would be exceeding his jurisdiction.*" (Emphasis supplied). The italicized portions of the foregoing quotations indicate that a factual question with respect to the sufficiency of the defense of former jeopardy was presented which the justice had jurisdiction to determine, and in that situation this Court held that prohibition would not lie to prevent such action by the justice. As there is no factual question for determination by the circuit court with respect to the defense of former jeopardy and as the circuit court has held the plea asserting that defense to be insufficient in law, the decision in that case in which a writ of prohibition was denied is likewise distinguishable from and is not controlling in the decision of this proceeding.

Decisions of appellate courts in other jurisdictions, which give full recognition to the well established rule that when the court has jurisdiction of the parties and the subject matter a writ of prohibition is not

warranted to correct errors or irregularities of the court for which the ordinary and usual remedies provided by law, such as appeal or writ of error, are available because in such instances there has been no usurpation or abuse of power, or lack of jurisdiction, or no action by the court in excess of its legitimate powers, support and sustain the proposition that where the facts which establish the defense of former jeopardy are undisputed and the question of jurisdiction is a question of law, prohibition will lie to prevent an accused from being twice put in jeopardy for the same offense. *Gomez v. Superior Court of Mendocino County*, 50 Cal. 2d 640, 328 P. 2d 976; *Coumas v. Superior Court of San Joaquin County*, 31 Cal. 2d 682, 192 P. 2d 449; *Rodriguez v. Superior Court of San Francisco County*, 27 Cal. 2d 500, 165 P. 2d 1; *Jackson v. Superior Court of San Diego County*, 10 Cal. 2d 350, 74 P. 2d 243, 113 A.L.R. 1422; *Markiewicz v. Black, Judge*, 138 Colo. 128, 330 P. 2d 539; *McCabe v. County Court of Bronx County*, 199 N.Y.S. 2d 241, 24 Misc. 2d 472.

In *Markiewicz v. Black, Judge*, 138 Colo. 128, 330 P. 2d 539, in which the court issued a writ of prohibition to prevent the accused from being twice put in jeopardy for the same offense the court said: ''We hold that petitioners have been in jeopardy and it appears from the record before us without contradiction, that respondent is about to place them in jeopardy a second time for the same offense. In such a case prohibition is a proper proceeding to protect petitioners in their constitutional right against being twice put in jeopardy for the same offense.''

In *McCabe v. County Court of Bronx County*, 199 N.Y.S. 2d 241, 24 Misc. 2d 472, in which prohibition was awarded to prevent the trial of the petitioner in the county court on the same charges as to which he had been previously placed in jeopardy, the court, in stating the reasons for the issuance of a writ of prohibition to prevent the accused from being twice put in jeopardy and in reaching the conclusion that such writ was available for that purpose, used this language:

"Although the court in its research has not found any statement anywhere in court opinion or legal text declaring it to be an exception to the general rule where the plea of double jeopardy is presented as a basis for the issuance of the writ of prohibition, it conceives this to be in the nature of an exception to the general rule and it should be so declared. This is so because of the protection accorded by our state and federal constitutions. The plea of double jeopardy is not a defense in the ordinary sense. For a defense such as alibi, self-defense, lack of intent, etc., is aimed at establishing the defendant's innocence of the crime charged and of necessity must be proffered at the trial; whereas the plea of double jeopardy (unless there was an actual acquittal upon a prior trial) is not directed toward establishing the defendant's innocence but is an assertion of a constitutional grant of immunity. Therefore, it is more than a defense. The act which terminates the first trial germinates into life the dormant seed of constitutional immunity. ' * * * no person shall be subject to be twice put in jeopardy for the same offense * * *'. New York Constitution, Art. 1, §6. ' * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * * '. United States Constitution, Amendment V. The guarantee is that a person shall not be subject to the risk of a second trial. Nor may this protection be a bridged or curtailed by holding that a defendant may assert it during any stage of the new trial. The immunity protects him against being subjected to another trial—any part of another trial. There is jeopardy so long as the indictment with the same charge is outstanding and pending. 'The court will [should] purge its records when there is menace lurking in the future until the purge is made complete' (Cardozo, J., in *People ex rel. Lemon v. Supreme Court,* 245 N. Y. 24, 35, 156 N. E. 84, 87, 52 A.L.R. 200). Therefore, reason and logic indicate that it is permissible to raise the plea of double jeopardy, if a person chooses, before the commencement of another trial and in whatever forum is proper and available."

It should be observed that the question of guilt or innocence of the petitioner of the offense with which he is charged in the first indictment is not presented in this proceeding. That question was determined by the jury upon the trial of the second indictment. The controlling question here is whether the petitioner, if tried upon the first indictment for murder, after his acquittal upon the trial of the second indictment, would be twice put in jeopardy of life or liberty for the same offense which the Constitution of this State expressly provides may not be done. As this Court, upon the facts disclosed by the record, is of the opinion that to try the petitioner again for the crime of murder under the first indictment would twice put him in jeopardy of life or liberty for the same offense, the petitioner is entitled to the writ of prohibition to prevent the circuit court from taking such constitutionally forbidden action.

The writ of prohibition, as prayed for by the petitioner, is awarded.

*Writ awarded.*